UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DOLORES A. GRIFFIN,

        Plaintiff,

-vs-

ANDREW M. SAUL, *Commissioner of Social Security*,[1]

        Defendant.

DECISION AND ORDER

18-CV-209-CJS

---

APPEARANCES

For Plaintiff:        Anthony John Rooney, Esq.
           Kenneth R. Hiller, Esq.
           Law Offices of Kenneth Hiller, PPLC
           6000 N. Bailey Avenue, Suite 1A
           Amherst, NY 14226
           (716) 564-3288

For the Commissioner:    Laura Ridgell Boltz, Esq.
           Office of the General Counsel
           Social Security Administration
           1961 Stout Street, Suite 4169
           Denver, CO 80294
           (303) 844-1190

           Lorie Ellen Lupkin, Esq.
           Social Security Administration
           Office of General Counsel
           26 Federal Plaza, Room 3904
           New York, NY 10278
           (212) 264-0768

## INTRODUCTION

**Siragusa, J.** This Social Security disability case is before the Court for review pursuant to 42 U.S.C. § 405(g) from the Commissioner's decision denying disability benefits for the period from February 6, 2013 until May 26, 2016. Plaintiff has moved for judgment on the pleadings, filed on August 8, 2018, ECF No. 10, and the Commissioner has cross-moved for judgment on

---

[1] The president nominated Andrew M. Saul to be Commissioner of Social Security and the Senate confirmed his appointment on June 4, 2019. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

the pleadings, filed on October 9, 2018, ECF No. 12. For the reasons stated below, the Court grants Plaintiff's motion and remands the matter to the Commissioner.

## BACKGROUND

Plaintiff filed an application for disability benefits under Title II of the Social Security Act on December 17, 2013, alleging that her disability, back and neck[2] pain, began on February 6, 2013. R. 152.[3] The Social Security Administration denied her claim initially on January 30, 2014, and she requested and was granted a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on April 15, 2016, in Buffalo, New York. Plaintiff was represented by an attorney at the hearing. The ALJ issued a decision on September 22, 2016, finding that from February 6, 2013, until May 26, 2016, Plaintiff was not disabled, and that after May 26, 2016, she was disabled (because her age category changed). Plaintiff appealed to the Social Security Administration's Appeals Council and provided additional evidence. The Appeals Council denied her appeal on December 8, 2017, making the ALJ's decision the Commissioner's final decision. Plaintiff filed her complaint in this Court through counsel on February 6, 2018. ECF No. 1.

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

---

[2] She testified to the ALJ that her neck pain was the "number reason preventing her from working." R. 47.

[3] "R." refers to pages in the entire record of proceedings before the Social Security Administration, filed on June 8, 2018, ECF No. 7.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 149 (1997).

When determining whether substantial evidence supports the Commissioner's findings, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings are supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. *Green-Younger v. Barnhart*, 335 F.3d 99, 105–06 (2d Cir. 2003); *see also Mongeur*, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo ).

Under Federal Rule of Civil Procedure 12(c), the Court may grant judgment on the pleadings where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. S*ellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). The certified copy of the transcript of the record, including the evidence upon which the ALJ relied, is part of the pleadings. 42 U.S.C. § 405(g).

## THE ALJ'S DECISION

The ALJ found that Plaintiff has the following severe impairments: degenerative disc disease status post motor vehicle accident and reading disorder. R. 28. He also determined that Plaintiff had the following non-severe impairment: obesity, which he found did not have "a significant effect on the claimant's ability to perform routine movement or necessary physical activity within the work environment or any other effects on the claimant's ability to work." R. 29. Further, the ALJ determined that she retained the residual functional capacity to perform light work, except for work that requires reading. *Id*.

DISCUSSION

Plaintiff raises the following as errors committed by the Commissioner: (1) the ALJ erred in his evaluation of Plaintiff's treating physicians; and (2) the ALJ erred by giving significant weight to Dr. Miller and some weight to Dr. Cardamone.

*Plaintiff's treating physicians*

Chiropractor Keith V. Cardimone,[4] D.C., examined Plaintiff on August 12, 2013. His treatment notes from August and September 2013 show several visits, but are practically illegible. R. 281–86. The entry for October 8, 2013, reads: "Chiro Care Cut off as of 7/18/13 for IME done on 6/21/13." R. 286. In a letter notarized on July 2, 2013, Dr. Cardimone wrote, *inter alia*, the following:

> The claimant does not require household help, transportation assistance, durable medical equipment or additional diagnostic testing . . . . She can perform her normal activities of daily living. She is capable of returning to a work environment with a restriction of lifting no more than 20 lbs., and no excessive bending and twisting at the waist.

R. 478.

David Holmes, M.D., was Plaintiff's primary care doctor. Plaintiff first saw him on September 30, 2013, for a routine follow-up and medicine renewal, a "no fault" visit regarding chronic pain in her neck and back following a car accident on February 6, 2013, as well as to obtain surgical clearance for "lap band"[5] surgery. R. 315. Dr. Holmes cleared Plaintiff for surgery, but did not make any assessment concerning her neck and back pain. R. 317. In another visit, on October 25, 2013, Dr. Holmes noted that Plaintiff had successfully undergone gastric surgery, and that she had hypertension, insomnia, and suffered from obesity. R. 312. He made no assessment concerning her neck and back pain. R. 312. Plaintiff's next visit with Dr. Holmes took place on November 15, 2013. Plaintiff reported she still had neck and shoulder pain, but wanted to return to work. R. 307. He examined her and noted she had "mild,

---

[4] Dr. Cardamone's report is at page 478 in the record, but is strangely preceded by a page from Kenneth Hiller's office listing the treating source as "Keith Conover DC." R. 477.

[5] "Lap-Band is a medical device that is implanted in order to reduce stomach size." *Dixon v. Allergan USA, Inc.*, No. 14-61091-CIV, 2015 WL 12915672, at *1 (S.D. Fla. July 16, 2015), *aff'd,* 645 F. App'x 930 (11th Cir. 2016).

diffuse upper back/shoulder tenderness," and assessed Plaintiff with cervical radiculopathy,[6] cervical spine stenosis,[7] and cervicalgia.[8] R. 309. He continued her medications and set a follow-up visit for three months later. R. 309. Dr. Holmes amended his report on November 16, 2013, striking through cervical radiculopathy, cervical spine stenosis, and cervicalgia in the section titled "Active Problems." R. 304. In his revised report, he assessed Plaintiff with adnominal pain and constipation. R. 306.

David H. Joslyn, RPA-C, and Cameron B. Huckell, M.D., saw Plaintiff on November 6, 2013. R. 288–92. Their report shows that Plaintiff was examined and was tolerating her symptoms of back and neck pain "with activity modification, massage therapy, and pain management." R. 291. Dr. Huckell stated Plaintiff was going to continue with "that approach," and he would reevaluate her in three or four months. *Id*. He wrote: "It is my opinion that Dolores is considered to be temporarily disabled at this time as a result of the motor vehicle accident dated 2/6/13." *Id*.

Donna Miller, D.O., performed a consultative examination of Plaintiff on January 23, 2014. R. 328–31. She wrote in her "medical source statement" that Plaintiff "has a mild limitation with lifting, bending, carrying, pushing and pulling." R. 331.

Dr. Holmes saw Plaintiff again on February 11, 2014. R. 432. He noted she was complaining of neck pain that radiated bilaterally to her arms and chest, and tingling hands. He further noted that Plaintiff saw Dr. Williams[9] for pain management, and saw an orthopedic surgeon, but had not seen a neurosurgeon. R. 432. Among her "Active Problems," Dr. Holmes

---

[6] The dictionary defines radiculopathy as "irritation of or injury to a nerve root (as from being compressed) that typically causes pain, numbness, or weakness in the part of the body which is supplied with nerves from that root." "radiculopathy." Merriam-Webster Dictionary (2019), https://www.merriam-webster.com/dictionary/radiculopathy #medicalDictionary.

[7] Stenosis is defined as "a narrowing or constriction of the diameter of a bodily passage or orifice." "stenosis." Merriam-Webster Dictionary (2019), https://www.merriam-webster.com/dictionary/radiculopathy #medicalDictionary.

[8] "Cervicalgia means, quite simply, neck pain." *Greenaway v. Berryhill*, No. 3:17-CV-30156-KAR, 2019 WL 1383592, at *7 (D. Mass. Mar. 27, 2019).

[9] The doctor's first name is not included.

noted she had cervical radiculopathy, cervical spine stenosis, and cervicalgia. Upon examination, he noted the following: "Digits and nails: Abnormal. Mild-mod tenderness post neck, upper back, lower back and upper chest bilat. Back flex –45 deg. ext ~3–5 deg." R. 433. His assessment was that Plaintiff suffered from cervical radiculopathy, and lumbago. He continued her medications, set a follow-up visit in three months, and referred her for a neurosurgical evaluation. R. 434.

In a report dated February 12, 2014, Dr. Huckell examined Plaintiff and wrote that she had undergone two independent medical examinations and that "[t]he second IME was on 7/9/13 by Dr. Lau who stated that 'I don't think that she can return to work at this time' and deferred the need for any further diagnostic testing to us." R. 334. The Court did not find Dr. Lau's report in the Record.

On April 11, 2014, Plaintiff underwent an anterior cervical discectomy and fusion C5–C6, C6–C7. R. 589, performed by neurosurgeon Elad Levy, M.D., MBA, FACS, FAHA, FAANS, assisted by Gursant S. Atwal, M.D. The operative report showed no complications. *Id*.

Dr. Huckell examined Plaintiff on April 16, 2013, and determined that she "is considered to be temporarily disabled at this time as a result of the motor vehicle accident dated 2/6/13." R. 301.

Plaintiff saw Dr. Holmes on April 29, 2014, "presenting for follow up s/p cervical fusion April 11th. Doing well after surgery." R. 435. He reviewed her medications and assessed her with a family history of hypertension, and with constipation. R. 437.

On May 14, 2014, Plaintiff saw Dr. Levy for her first postoperative visit. R. 595. In his report, Dr. Levy wrote: "She states she is about 60–65% improved. She has no arm pain. She has slight numbness in her left upper extremity. Neck pain can sometimes can be a 5–6/10." He wanted her to start physical therapy in three weeks and restricted her to no lifting. R. 596.

Dr. Holmes saw Plaintiff on July 22, 2014, for a follow-up on her medications and a blood test. R. 439. The doctor noted the following: "Has been having constant dull aching pain rates it as a 7/10. States that she takes Tylenol helps very little. States her pain management

doctor's office is now closing and requires 2 new refills that he prescribed. Pt is also concerned because she lethargic and wants labs done." R. 439. Fahad Jawald (Family Medicine)[10] assessed Plaintiff as suffering from cervical radiculopathy, cervicalgia, chronic pain, hypertension, and hyperlipidemia, in a report signed by Dr. Holmes. R. 445, 447. He referred Plaintiff for pain management. R. 565.

Dr. Levy saw Plaintiff again on August 20, 2014. R. 598. He stated that she reported she was still in a lot of pain, and he asked her to do physical therapy since the pain was primarily muscular and physical therapy should improve her condition. *Id*.

Dr. Holmes saw Plaintiff on August 25, 2014, and in his report section entitled "Message," he wrote the following: "ECMC No Fault Return to Work: She is F/U with Nerosurg to determine specific level of disability. Work restrictions: no lifting more than 10 lbs no pushing/pulling more than lbs [sic] and no repetitive bending or twisting." R. 450.

Plaintiff went for a follow-up visit to Dr. Holmes on September 2, 2014. R. 568. He assessed her with wheezing and a cough. R. 570. She saw Dr. Holmes again on October 14, 2014, for a pain medication refill. R. 573. Her symptoms included the following: "Musculoskeletal: diffuse Joint pain, back pain. Joint stiffness, pain in other joints and neck pain + LBP, but no joint swelling and no back muscle spasm." *Id*. Dr. Holmes' physical exam revealed: "Musculoskeletal: Gait and station: Abnormal. Slow. Digits and nails: Normal without clubbing or cyanosis. Inspection/palpation of joints, bones, and muscles: Abnormal. Reduced ROM on flexion/extension of the back." R. 575. Enaame Farrell, M.D., who also signed the October report, assessed facet arthropathy,[11] lumbosacral, lower back pain, and cervical

---

[10] The Record does not identify whether Fahad Jawald is a medical doctor.

[11] A search for "facet arthropathy" on the Mayo Clinic's website produced an article on "facet arthritis," and explained that the "facet joints are joints in the spine located in the back (posterior) aspect of the spine…at each vertebral level, one on each side of the spine…. Facet arthritis happens when the cartilage that covers the ends of the joints wears out and becomes thin. This can contribute to the growth of osteophytes (bone spurs) and hypertrophy (enlargement) of the joints." Facet arthritis. Mayo Clinic, https://sportsmedicine.mayoclinic.org/condition/facet-arthritis/ (last visited Sept. 19, 2019).

radiculopathy. R. 575. Plaintiff was recommended to receive joint injections for pain control, and physical therapy referral and treatment. R. 576.

Plaintiff started physical therapy on September 25, 2014. R. 600. She told the therapist she wanted "this stiffness gone" and wanted to increase her strength to lift, push, and pull. *Id*.

On November 10, 2014, Plaintiff visited Dr. Holmes for a follow-up regarding cervical pain. R. 578. In the history section of his report, Dr. Holmes wrote the following concerning her chronic pain:

> **Chronic Pain (Brief):** The patient is being seen for a routine clinic follow-up of chronic pain. Symptoms: neck pain and back pain, but no headache, no abdominal pain, no pelvic pain and no pain [sic]. The patient is currently experiencing symptoms. Associated symptoms: depression, anxiety and sleep disturbance, but no irritability, no difficulty concentrating and no decreased appetite. Current treatment includes physical therapy, nonsteroidal anti-inflammatory drugs. opioid analgesics, muscle relaxants and mental health care. Pertinent medical history: chronic low back pain, depression and anxiety. She was previously evaluated by a primary care provider. Previous presentation included back pain and neck pain. Past evaluation has included [X]-ray(s) and MRI.

R. 578. Dr. Holmes' musculosketal examination revealed the following: "Gait and station: Normal. Digits and nails: Normal without clubbing or cyanosis. Inspection/palpation of Joints, bones, and muscles: Abnormal. Tenderness upon palpation of cervical spine, decreased passive ROM lower back." R. 580. He reviewed her medications, but the report contains no specific treatments. R. 582.

On February 10, 2015, Plaintiff was discharged from physical therapy "due to lack of attendance from [sic] PT since 11/18/14." R. 583. She achieved five short term goals, none of which dealt with lifting. *Id*.

On February 20, 2015, Dr. Levy ordered Plaintiff to remain out of work from that day until March 20, 2015. R. 610. He later extended the order to April 23, 2015, R. 611, and then May 27, 2015, R. 613.

According to Anthony R. Mangano, M.D., an MRI taken on April 17, 2015, showed the following: Anterior cervical disc fusion plate from C5-C7 appears well seated. Extensive spondylosis shown. [L]ung apices are clear." R. 612.

On April 27, 2015, Plaintiff was seen by Simon Morr, M.D. R. 614–15. His examination disclosed she was "full strength in bilateral upper and lower extremities." *Id*. His plan was to

> obtain electromyelographic[12] studies of the lower extremities. We are also going to obtain a new MRI. These are important to identify a specific localization of any neural damage, as well as to identify any possible anatomical lesions in the lumbar spine, which may be contributing to the development of her radicular complaints and progression of her back pain. The last MRI was done over two years ago and a new MRI is warranted. We will see her back in clinic once those studies are obtained. We shall have her continue with physical therapy at this time.

R. 615. In an addendum to Dr. Morr's report, Dr. Levy wrote: "She is now 70% better from surgery. She still has neck pain 6/10 and occasional left arm pain. She has no right arm pain. She is now concerned about her back pain. She tried physical therapy and massage." R. 615. His plan was to "update her MRI of the lumbar spine and get an EMO given the fact that she has a bilateral lower extremity radiculopathy." R. 616.

On May 14, 2015, the results of Plaintiff's NCV[13] and EMG were as follows:

Impression:

1. There is electrophysiologic evidence of a bilateral LS/S1 radiculopathy with greatest [sic]

2. Patient has right-sided sensory polyneuropathy

3. Absent left tibial H reflex

4. Absent F waves throughout the lower extremity

R. 617.

---

[12] An electromyograph ("EMG") is "an instrument that converts the electrical activity associated with functioning skeletal muscle into a visual record or into sound and is used to diagnose neuromuscular disorders and in biofeedback training." "electromyograph." Merriam-Webster dictionary, https://www.merriam-webster.com/dictionary/electromyographic.

[13] Nerve Conduction Velocity test

On June 22, 2015, Plaintiff underwent an MRI, the results of which were reported by Uzma Alam, M.D., who wrote:

> Impression: interval appearance of a central to right paracentral annular bulge and endplate spur complex at L5–S1 which contacts the right S1 nerve root and also results in moderate right neural foraminal narrowing with contact of the right exiting nerve. The rest of the canal and neural foramina maintain their caliber and are unchanged from the prior study.

R. 622.

On July 6, 2015, Dr. Levy saw Plaintiff and concluded:

> She does have low back pain that radiates down her bilateral lower extremities in the S1 distribution, left greater than right. Her EMG and imaging are compatible with one another; however, she will initiate physical therapy in the next day and we will see her back in the office. Pending the results a decision will be made as to how to proceed. I did offer her an epidural injection and, if after four weeks of physical therapy there is no improvement, we can do the injection.

R. 623.

Dr. Levy saw Plaintiff again on September 2, 2015. R. 625. She reported to him that physical therapy was helping, but that she still had about 70% back pain and 30% leg pain. *Id*. He concluded that:

> Dolores Griffin is a 54-year-old female who has low back pain radiating down her bilateral lower extremities and seems to be responsive to physical therapy. We will continue with physical therapy and add strengthening to the therapy. If she should plateau, we can provide her with aquatherapy or she will contact her pain management doctor for epidural injections. We will see her as needed.

R. 625–26.

### *The ALJ's assessment of the treating physicians' opinions*

The ALJ assigned little weight to Dr. Huckell's November 2013 opinion that Plaintiff was temporarily disabled, stating that it was conclusory, and that the disability determination is reserved to the Commissioner, citing 20 C.F.R. 404.1527(d) and SSR 96-5p. Dr. Huckell found that Plaintiff was "temporarily" disabled as late as November 6, 2013. R. 291. He did not explain what he meant by "temporarily," but his earlier reports in April and August contained the same language, implying that the disability might last for longer than the intervals between

visits. In February 2015, Dr. Huckell concluded that Plaintiff had a permanent and partial disability and stated that in order to determine "specific limitations, we recommend an FCE[14] if needed." R. 341. The Court finds that the ALJ provided a good explanation for discounting Dr. Huckell's opinion regarding Plaintiff's disability, a question reserved to the Commissioner.

The ALJ assigned some weight to Dr. Cardamone's opinion that Plaintiff could lift no more than 20 pounds and should not do any excessive bending and twisting at the waist. R. 32, 478. The ALJ explained that the restrictions were based on the doctor's physical examination. However, the ALJ discounted Dr. Cardamone's and Dr. Lau's opinions that Plaintiff was unable to return to work "because it is an opinion regarding the claimant's ability to return to her past work and not any work, which is an issue reserved to the Commissioner." R. 32. Plaintiff concedes that Dr. Huckell did not state what limitations she had. Pl.'s Mem. of Law 6, Aug. 7, 2018, [ECF No. 10-1](ECF No. 10-1).The Court finds that the ALJ provided a good explanation for his rejection of the doctors' disability opinions. 20 C.F.R. § 404.1527(d).

The ALJ assigned significant weight to Dr. Miller's opinion that Plaintiff "had mild limitations with lifting, bending, carrying, pushing, and pulling." R. 32. He found her opinion was "supported by the record as a whole and consistent with the physical limitations in the claimant's residual functional capacity." *Id*. Plaintiff faults Dr. Miller for not reviewing imaging studies of Plaintiff's back or neck, and the Commissioner argues that "even if this was a mistake, it does not merit remand because Dr. Miller's opinion was otherwise consistent with the rest of the record." Comm'r's Mem. of Law 12, Oct. 9, 2018, [ECF No. 12-1](ECF No. 12-1). In *Alessi v. Colvin*, No. 14-CV-7220 (WFK), 2015 WL 8481883 (E.D.N.Y. Dec. 9, 2015), the district court found an insufficient basis for the ALJ's decision there to find the plaintiff had the residual functional capacity for light work "especially because Dr. Govindaraj, the sole medical source whose functional assessment the ALJ gave 'great weight' to did not review the lumbar and cervical MRIs, which showed some abnormalities." *Alessi*, 2015 WL 8481883, at *5. The

---

[14] Perhaps "functional capacity evaluation." *See Mowers v. Paul Revere Life Ins. Co.*, 204 F.3d 372, 374 (2d Cir. 2000) ("FCEs are used to examine injuries suffered by insurance claimants who have already seen a doctor and have been found to have a disabling condition. An FCE includes the claimant's performance of a series of tasks to estimate physical limitations. *See* Michael A. Riccardi, *Battle Brewing Over Insurers' Test for Disabilities,* N.Y.L.J., Sept. 21, 1999, at 1.).

Court agrees with the reasoning in *Alessi* and finds that the ALJ erred by giving Dr. Miller's opinion significant weight.

The ALJ assigned little weight to Dr. Holmes' opinion, writing that it pertained to "the claimant's ability to return to her past work and not any work, which is an issue reserved to the Commissioner and the claimant's lifting restrictions appear to be a temporary opinion and are not supported by the record as a whole or the claimant's self-reports of function." R. 32. Dr. Holmes restricted Plaintiff to lifting no more than ten pounds, limited her pushing and pulling ability, and directed she should not perform any repetitive bending or twisting. He also noted she would be following up with a neurosurgeon to determine the specific level of her disability. As a treating physician, Dr. Holmes' opinion on Plaintiff's ability to perform lifting, if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [Plaintiff's] case record," should be given controlling weight. 20 C.F.R. § 404.1527. The ALJ's conclusion that Dr. Holmes' lifting restriction is speculative, and, thus, his rejection of Dr. Holmes' opinion on her ability to lift is not supported by substantial evidence.

## CONCLUSION

The ALJ's determination that Plaintiff has the residual functional capacity to perform light work is not supported by this record. Therefore, the Court grants Plaintiff's motion for judgment on the pleadings, [ECF No. 10](), and remands this matter to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g). The Court denies the Commissioner's cross-motion, [ECF No. 12]().

DATED:     September 30, 2019
                Rochester, New York

                                            /s/ Charles J. Siragusa
                                            CHARLES J. SIRAGUSA
                                            United States District Judge